UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER WHEELER,

                                    Plaintiff,

                                                        9:07-CV-0892
v.                                                      (TJM/GHL)

GEORGE PATAKI, et al.,

                                    Defendants.
_____

APPEARANCES:                                OF COUNSEL:

PETER WHEELER, 95-A-7333
Plaintiff *pro se*
Bare Hill Correctional Facility
Caller Box 20
Malone, NY 12953

HON. ANDREW M. CUOMO                         ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Peter Wheeler alleges that he was wrongfully confined to a psychiatric facility after his

conditional release date and that Defendants retaliated against him for filing grievances and state

*habeas corpus* proceedings.  For the reasons that follow, I recommend that Defendants' motion

for judgment on the pleadings (Dkt. No. 26) be denied in part and granted in part.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed his original complaint on August 27, 2007.  At that time, he was confined at Cayuga Correctional Facility.  (Dkt. No. 1.)  He filed an amended complaint on the same date. (Dkt. No. 5.)  On October 10, 2007, the Court ordered Plaintiff to file a second amended complaint.  (Dkt. No. 8.)  The order noted that the amended complaint did not include a short and plain statement of the facts giving rise to relief or allege the personal involvement of some defendants, that certain parts of the amended complaint appeared barred by the statute of limitations, and that Plaintiff's request to be released from prison needed to be raised in a petition for writ of *habeas corpus*.

Plaintiff did not timely file a second amended complaint and judgment was entered. (Dkt. No. 12.)  On February 12, 2008, the Court vacated judgment and gave Plaintiff 30 additional days to file a second amended complaint.  (Dkt. No. 14.)  The Court ordered that:

> [a]ny second amended complaint submitted must provide specific details about the nature of plaintiff's claims and the injury he has allegedly suffered as specifically related to each defendant.  For example, if plaintiff's civil rights were violated, he must set forth what rights, how, and by whom.  Vague or conclusory statements that a defendant violated plaintiff's rights are not sufficient to support a claim.  The claims included in the second amended complaint must relate to wrongdoing that occurred at Auburn Correctional Facility or the Central New York Psychiatric Center.

(Dkt. No. 14 at 4.)

Plaintiff filed the second amended complaint on February 27, 2008.  (Dkt. No. 16.) Defendants George Pataki, Donald Sawyer, Mohammed Igbal, Nurul Hogue, and Harold Graham

were served and/or entered their appearances.  (Dkt. Nos. 20-25, 33.)  Defendants now move for

judgment on the pleadings[1].  (Dkt. No. 26.)  Plaintiff has opposed the motion.  (Dkt. Nos. 31, 36,

44.)

>    **B.    Summary of Plaintiff's Second Amended Complaint**

Liberally construed, the second amended complaint alleges as follows:

Plaintiff, a state prisoner serving a 6 to 12 year sentence for attempted rape, had a

conditional release date of October 18, 2006.  (Dkt. No. 16 at 10 and  ¶¶  6-7.)  Plaintiff's

conditional release date was based on his completion of several programs, and Plaintiff was told

that the only "way this great reward can vanish [was] if Plaintiff hurt somebody drugs or a Tier

III misbehavior report."  (Dkt. No. 16 at 7.)  Plaintiff did not hurt anyone, use drugs, or receive a

Tier III misbehavior report.  (Dkt. No. 16 at 7.)  At some point, then-governor George Pataki

signed an executive order directing that sex offenders be civilly committed.  (Dkt. No. 16 at ¶ 6.)

Defendants Mohammed Igbal and Nurul Hogue evaluated Plaintiff on October 12, 2006.  As a

result of these doctors' evaluations, Plaintiff was confined at Central New York Psychiatric

Center ("CNYPC") beyond his conditional release date.  *Id.*  Defendant Harold D. Graham, the

Superintendent of Auburn Correctional Facility,  "sanction[ed]" the doctors' report.  *Id.*  Plaintiff

alleges that there was never a hearing "to determine the truth behind" the doctors' evaluations.

*Id.*

Plaintiff claims that "[a]lmost immediately" after he filed grievances regarding his

---

[1]       The docket and the title page of Defendants' memorandum of law refer to the
motion as a motion to dismiss.  However, Defendants' notice of motion states that they are
moving pursuant to Federal Rule of Civil Procedure 12(c), which governs motions for judgment
on the pleadings.  As discussed below, motions to dismiss and motions for judgment on the
pleadings are determined by the same standard.

commitment at CNYPC, Defendants Pataki and Donald Sawyer (the Director of CNYPC) "saw

fit" for a female correctional officer to accuse Plaintiff of making sexual advances toward her.

(Dkt. No. 16 at 14.)  This "lead Plaintiff back to incarceration" in the Oneida County Jail.  (Dkt.

No. 16 at 14.)

According to the public website maintained by the New York Department of Correctional

Services, Plaintiff was returned to state prison on a parole violation on April 20, 2007.

Thereafter, he was transferred to Cayuga Correctional Facility, the Clinton Annex and Attica.

(Dkt. No. 16 at 14.)

Plaintiff claims that Defendants' actions violated his right to procedural due process

because he did not receive a hearing before being sent to CNYPC.  He further alleges that

Defendants' violated his right to access to the courts[2].  (Dkt. No. 16 at ¶ 7.)  He also alleges that

Defendants Igbal, Hogue, Sawyer, and Graham were deliberately indifferent to Plaintiff's health

and failed to provide him adequate medical care.  (Dkt. No. 16 at 13.)  Finally, he alleges that

Defendants Pataki and Sawyer retaliated against him.  (Dkt. No. 16 at 14.)  Plaintiff alleges that

he suffered "pain and mental anguish.  He continue[s] to suffer from migraine headaches."  (Dkt.

No. at 16 at 13.)  He requests $500,000 in damages, unspecified declaratory relief, and

unspecified injunctive relief.  (Dkt. No. 16 at 7 and ¶ 9.)

**C.      Summary of Grounds in Support of Defendants' Motion**

Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  (Dkt. No. 26.)  Defendants argue that (1) the complaint fails to comply with

---

[2]      Plaintiff's access to the courts claim appears to be based on the lack of a hearing prior to his commitment to CNYPC.  I have analyzed this claim as part of Plaintiff's procedural due process claim.

this Court's February 12, 2008, order; (2) the claim based upon the failure to release Plaintiff on

his conditional release date is barred by the rule in *Heck v. Humphrey*; (3) the commitment of

Plaintiff to CNYPC without a hearing was lawful; (4) the complaint fails to state a claim of

inadequate medical treatment;(5) the complaint fails to state an actionable retaliation claim; and

(6) Plaintiff failed to exhaust his administrative remedies regarding his retaliation claim.  (Dkt.

No. 26-2.)

>    **D.    Summary of Plaintiff's Response to Defendants' Arguments**

>    Plaintiff has filed three responses to the Defendants' motion.  (Dkt. Nos. 31, 36 and 44.)

These documents essentially reiterate the allegations of the second amended complaint.

## II.    LEGAL STANDARD GOVERNING MOTIONS FOR JUDGMENT ON THE PLEADINGS

>    "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the

same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Cleveland v.

Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006).  Under Federal Rule of Civil Procedure

12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which

relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant

may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of

the pleading" under Federal Rule of Civil  Procedure 8(a)(2);[3] or (2) a challenge to the legal

---

[3]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed

cognizability of the claim.[4]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[5]  The main purpose of this rule is to "facilitate a proper decision on the

---

to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[4]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[5]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

merits."[6]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[7]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[8]  However, it is well established that even this liberal notice pleading standard "has its limits."[9]  As a result, several Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading

---

[6]        *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[7]        *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.)  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[8]        *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[9]        2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

standard.[10]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the

Supreme Court, in reversing an appellate decision holding that a complaint had stated an

actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[11]

Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8

"fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the

_____

[10]      *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007)
(pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at
1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v.
Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209
(2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule
8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park
Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002)
(affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule
8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the
U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued
precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit
interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on
summary affirmances because "they clearly acknowledge the continued precedential effect" of
*Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the
Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[11]      The Court in *Twombly* further explained: "The phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately
stated, it may be supported by showing any set of facts consistent with the allegations in the
complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate
complaint claims, not the minimum standard of adequate pleading to govern a complaint's
survival."  *Twombly*, 127 S. Ct. at 1969.

pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair

notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id*. at 1965,

n.3 [citation omitted].  While this does not mean that a pleading need "set out in detail the facts

upon which [the claim is based]," it does mean that the pleading must contain at least "some

factual allegation[s]." *Id*. [citations omitted].  More specifically, the "[f]actual allegations must

be enough to raise a right to relief above the speculative level [to a plausible level]," assuming

(of course) that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted].  What

this means, on a practical level, is that there must be "plausible grounds to infer [actionable

conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will

reveal evidence of [actionable conduct]." *Id*.

     As have other Circuits, the Second Circuit has repeatedly recognized that the clarified

plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims,

not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly*).[12]  The

Second Circuit has also recognized that this *plausibility* standard governs claims brought even by

*pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the

---

[12]  *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil
rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts
to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-
CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action,
stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a
right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc.
v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's
flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v.
Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe
the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility
standard,' which obliges a pleader to amplify a claim with some factual allegations in those
contexts where such amplification is needed to render the claim *plausible*.") [emphasis in
original].

special solicitude normally afforded *pro se* litigants).[13]

It should be emphasized that Rule 8's plausibly standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted].  That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim.  *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]).  That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[14]  There must still be enough facts alleged to raise a right to relief above the

---

[13]      *See, e.g.*, *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

[14]      For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm."  127 S. Ct. at 2199.  The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8 and *Twombly*, all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease."  *Id*. at 2200.  While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and

speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[15]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[16]  In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

---

the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need.  The *Erickson* decision had to do with only the first element, not the second element.  *Id*. at 2199-2200.  In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication.  *Id*.  This point of law is hardly a novel one.  For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.  *See, e.g., Rose v. Alves*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[15]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[16]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

11

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[17]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[18]  Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[19]  Of course, an opportunity to

---

[17]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[18]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[19]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

amend is not required where the plaintiff has already amended his complaint.[20]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[21]

However, while this special leniency may somewhat loosen the procedural rules

governing the form of pleadings (as the Second Circuit very recently observed),[22] it does not

---

[20]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2
(E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended
complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384
(S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[21]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation
omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of
course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint
should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)
[citation omitted]; *see, e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7
(N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error
in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS'
established grievance process–was substantive and not formal in nature, rendering repleading
futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors
in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and
not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob
Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff
opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because
the errors in his complaint–which included the fact that plaintiff alleged no violation of either the
Constitution or laws of the United States, but only negligence–were substantive and not formal in
nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D.
Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his
complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the
defendants were protected from liability by Eleventh Amendment immunity–was substantive and
not formal in nature, rendering repleading futile).

[22]     *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5
(2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally]
entails, at the very least, a permissive application of the rules governing the form of pleadings.")
[internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d
Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of

completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[23]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[24]  Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[25]

## III.   ANALYSIS

### A.   Compliance With February Order

Defendants argue that the second amended complaint does not comply with this Court's

---

important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[23]     *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[24]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[25]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

February 12, 2008, order and should thus be dismissed.  (Dkt. No. 26-2 at 2.)  Specifically,

Defendants argue that "it remains impossible to ascertain plaintiff's causes of action, the alleged

facts that support them, what acts of the named defendants allegedly caused deprivations of

plaintiff's rights or what damages were allegedly suffered by the plaintiff."  *Id*.  This argument is

without merit.  This Court has already determined that the second amended complaint complies

with the February 12, 2008, order, noting that  "despite the irregularity of the pleading, the nature

of plaintiff's claims [is] discernible and the [second] amended complaint is susceptible to a

meaningful response by defendants."  (Dkt. No. 17 at 2.)  Therefore, the second amended

complaint is not subject to dismissal on this ground.

      **B.**     ***Heck v. Humphrey***

      Defendants argue that Plaintiff's claims regarding the failure to release him on his

conditional release date must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).

(Dkt. No. 26-2 at 3.)  In *Heck*, the Supreme Court held that

> in order to recover damages for [an] allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has been
> reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of *habeas
> corpus*.

*Heck*, 512 U.S. at 486-87.  If, however, a prisoner has been released from the confinement that he

challenges, "a concrete and continuing injury that is a collateral consequence of the detention and

can be remedied by granting the [*habeas*] writ must exist" in order for the *Heck* rule to apply.  *So*

*v. Reno*, 251 F. Supp. 2d 1112, 1121 (E.D.N.Y. 2003) (internal quotation marks omitted) (citing,

15

*inter alia*, *Spencer v. Kemma*, 523 U.S. 1, 7 (1998)).  Defendants argue that Plaintiff's claim

regarding his confinement to CNYPC is barred by *Heck* (and, implicitly, not saved by the

collateral consequences rule) because Plaintiff "remains incarcerated and his sentence has not

been invalidated."  (Dkt. No. 26-2 at 3.)

  *Heck* does not bar Plaintiff's action because Plaintiff was no longer confined at CNYPC

when he filed this action[26].  In order to challenge a confinement after release from that

confinement, "a concrete and continuing injury that is a collateral consequence of the detention

and can be remedied by granting the writ must exist."  *So v. Reno*, 251 F. Supp. 2d 1112, 1121

(E.D.N.Y. 2003)(internal quotation marks omitted) (citing, *inter alia*, *Spencer v. Kemma*, 523

U.S. 1, 7 (1998)).  No such concrete and continuing injuries are present here.  As a result,

Plaintiff cannot satisfy the case-or-controversy requirement to bring a *habeas* claim regarding his

CNYPC confinement.  Indeed, when he attempted to bring such a *habeas* claim, this Court

dismissed it as moot based on his release from CNYPC.  *Wheeler v. Pataki*, No. 9:07-CV-0863

(NAM/DEP), Dkt. No. 10 (N.D.N.Y. Feb. 19, 2008) ("[P]etitioner has been released from the

challenged confinement at CNYPC and has not demonstrated that he suffered any collateral

consequences from that confinement sufficient to establish a concrete injury that can be remedied

by granting the writ [and thus] the Court finds that his request for *habeas corpus* release is moot

and hereby dismisses the action.").  "[W]here federal *habeas corpus* is not available to address

constitutional wrongs, § 1983 must be."  *Jenkins v. Haubert*, 179 F.3d 19, 26 (2d Cir. 1999).  See

also *Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001) (*Heck* rule did not bar action challenging

---

  [26] Although Plaintiff was incarcerated when he brought this action, that incarceration
was the result of a parole violation and not a continuation of the CNYPC confinement that he
challenges in this case.

duration of confinement brought after juvenile was released from juvenile system).  Therefore,

Plaintiff's claims regarding his confinement at CNYPC are not barred by the *Heck* rule.

### C.      Due Process Claim

Defendants argue that even if Plaintiff's claim regarding his confinement at CNYPC is

not barred by *Heck*, the second amended complaint fails to state a claim because the face of the

complaint reveals that Plaintiff received all the process that was due.  (Dkt. No. 26-2 at 4.)

Specifically, Defendants state that

> a person may be involuntarily placed in a psychiatric facility without
> a hearing upon a finding by two physicians that he or she is mentally
> ill and in need of involuntary care and treatment.  The complaint
> alleges that the plaintiff was placed in Central New York Psychiatric
> Center upon the reports of defendant physicians Igbal and Hogue.
> Such placement is lawful and proper pursuant to Correction Law
> Section 402 and Mental Hygiene Law Section 9.27.  The procedures
> set out in the Correction Law and Mental Hygiene Law provide for a
> hearing after the involuntary placement of a person in a psychiatric
> facility upon the demand of the committed individual.  The second
> amended complaint fails to allege that the plaintiff demanded such a
> hearing.

(Dkt. No. 26-2 at 4.)

Defendants misstate the process that is due.  Within a month of Plaintiff's commitment to

CNYPC, the New York Court of Appeals issued a decision in a *habeas* case filed on behalf of

former prisoners who, like Plaintiff, were involuntarily committed to psychiatric treatment

centers just prior to their parole, conditional release or release dates.  These former prisoners had

been committed under the procedures mandated by the Mental Hygiene Law rather than the

procedures mandated by Corrections Law section 402.  The Corrections Law procedures are

considerably more rigorous.  Under the Mental Hygiene Law, no pre-commitment hearing is

required and there is no court involvement in the process.  Corrections Law section 402, on the other hand, requires that the two examining physicians be court-appointed, that a court approve the commitment order after notice to the inmate, his or her closest friend or relative and the Mental Hygiene Legal Service, and that a pre-commitment hearing be held at the request of the inmate.  The Court of Appeals held that prison officials must follow the procedures mandated by Corrections Law section 402 rather than the procedures mandated by the Mental Hygiene Law when committing prisoners whose terms had not yet expired.  *New York ex rel. Harkavy v. Consilvio*, 7 N.Y.3d 607 (2006).  Regarding the petitioners who had been improperly committed under the Mental Hygiene Law rather than the Corrections Law and remained involuntarily committed, the court ordered that they "be afforded an immediate retention hearing."  *Id.*. at 614.

Contrary to Defendants' argument, the face of the second amended complaint does not show that Plaintiff received all of the procedure that was due under Corrections Law section 402. It does not show that Defendants Igbal and Hogue were court-appointed or that the court approved the commitment order after notice and an opportunity for a pre-commitment hearing.  It does not show that Plaintiff received an immediate retention hearing in the wake of the Court of Appeals' decision.  Indeed, the second amended complaint alleges that after the Court of Appeals "pass[ed] a law that all sex offenders should receive an immediate hearing ... Plaintiff ... never receive hearing."  (Dkt. No. 16 at 11.)  I recommend, therefore, that Defendants' motion for judgment on the pleadings with respect to Plaintiff's procedural due process claim be denied[27].

---

[27]    Defendants also argue, cursorily and without citation to authority, that the second amended complaint fails to adequately allege that Defendants Igbal, Hogue and Sawyer were personally involved with the alleged procedural due process violation.  (Dkt. No. 26-2 at 4.) "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting

**D.       Eighth Amendment**

The second amended complaint alleges that Defendants Igbal, Hogue, Graham and

Sawyer were deliberately indifferent to Plaintiff's medical needs.  Specifically, Plaintiff alleges

that Igbal and Hogue "fail[ed] to provide adequate medical care to him - report of follow up care

on the outside/in society," that Sawyer "fail[ed] to provide adequate medical care to him - by

opening his door at Central New York Psychiatric Center base[d] upon two medical doctor's

report," and that Graham "exercised deliberate indifference to Wheeler's health and saftey by

signing his approval for M.D. Mohammad Igbal and M.D. Nurul Hogue medical report which

lead to Wheeler being transferred to Central New York Psychiatric Center."  (Dkt. No. 16 at 12-

13.)   Defendants argue that the second amended complaint fails to state an Eighth Amendment

medical care claim because (1)  Plaintiff has failed to identify any serious medical need for which

he required medical attention; and (2) it is "completely devoid of any allegations that any

defendants were deliberately indifferent to [P]laintiff's medical needs."  (Dkt. No. 26-2 at 3.)

---

*Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]).  In order to
prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show
some tangible connection between the alleged unlawful conduct and the defendant.  If the
defendant is a supervisory official, such as a DOCS Commissioner or Deputy Commissioner, a
mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the
doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that
unlawful conduct.  In other words, supervisory officials may not be held liable merely because
they held a position of authority.  Rather, supervisory personnel may be considered "personally
involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation
after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or
custom under which the violation occurred, (4) had been grossly negligent in managing
subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of
inmates by failing to act on information indicating that the violation was occurring.  *Colon v.
Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding
fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).
The undersigned finds that the second amended complaint adequately alleges Defendants'
personal involvement.  (Dkt. No. 16 at 10, 12.)

19

Defendants are correct.

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, 'sufficiently serious'. . . .   [Second,] a prison official must have a 'sufficiently culpable state of mind.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety . . . ."  *Farmer*, 511 U.S. at 834.  Generally, to prevail on a claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance* , 143 F.3d at 702.  Here, Plaintiff alleges no such condition.  Indeed, the second amended complaint does not include any information whatsoever about *any* condition from which Plaintiff suffers.  Therefore, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim.

### E.     Retaliation

Defendants argue that Plaintiff has not stated a cause of action for retaliation.  (Dkt. No. 26-2 at 5.)

Claims of retaliation like those asserted by Plaintiff find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such

claims is the notion that in a prison setting, corrections officials may not take actions which

would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389

F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted,

however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v.*

*Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult
> to dispose of on the pleadings because they involve questions of intent
> and are therefore easily fabricated.   Second, prisoners' claims of
> retaliation pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration.  This is so because virtually any
> adverse action taken against a prisoner by a prison official--even those
> otherwise not rising to the level of a constitutional violation--can be
> characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by

the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2)

the defendants took "adverse action" against the plaintiff–namely, action that would deter a

similarly situated individual of ordinary firmness from exercising his or her constitutional rights;

and (3) there was a causal connection between the protected speech and the adverse action--in

other words, that the protected conduct was a "substantial or motivating factor" in the

defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239

F.3d 489, 492 [2d. Cir. 2001]).  Under this analysis, adverse action taken for both proper and

improper reasons may be upheld if the action would have been taken based on the proper reasons

alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) [citations omitted].

Read liberally and taking all allegations as true, the second amended complaint states a claim for retaliation.  It alleges that (1) Plaintiff engaged in protected conduct by filing grievances and a state *habeas corpus* action against Defendants Pataki and Sawyer; (2) that those Defendants took adverse action against Plaintiff because they "saw fit for .... official Hanley to false speak toward Plaintiff stating Wheeler came upon her in the wrong way," resulting in charges being brought against Plaintiff; and (3) Defendants took this action "in retaliation for the grievances" one month after Plaintiff filed his state *habeas corpus* action[28].  (Dkt. No. 16 at 14.) These allegations meet the Rule 8 standard of providing Defendants with fair notice of the nature of the claim and the grounds on which the claim rests, thus enabling Defendants to answer.

Defendants also argue that Plaintiff has failed to exhaust his administrative remedies regarding the retaliation claim.  (Dkt. No. 26-2 at 5-6.)

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[29]  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

---

[28]     "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action.  *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *accord Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)."  *Espinal v. Goord*, __ F.3d __, No. 07-0612 at 18 (2d Cir. Feb. 2, 2009).

[29]     42 U.S.C. § 1997e.

excessive force or some other wrong."[30]   The Department of Correctional Services ("DOCS") has

available a well-established three-step inmate grievance program.[31]

For some years now, it has been the majority rule (followed by the Second Circuit) that a

prisoner's fulfillment of his duty to exhaust his available administrative remedies under the

PLRA is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983

but a fact that may be challenged by a defendant through an affirmative defense (such as on a

motion for summary judgment pursuant to Rule 56, or a motion to dismiss for lack of

subject-matter jurisdiction pursuant to Rule 12 [b][1] ).  See, e.g., *Jenkins v. Haubert*, 179 F.3d

19, 28-29 (2d Cir.1999) ("Because, under the PLRA, a prisoner must exhaust administrative

remedies before filing a § 1983 suit ..., a defendant in a prisoner § 1983 suit may also assert as an

affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v.*

*Melindez*, 199 F.3d 108, 114 (2d Cir.1999) ("A court may not dismiss for failure to exhaust

administrative remedies unless the court determines that such remedies are available. Snider's

answers [on a form complaint] cannot establish that.").

In 2007, the Supreme Court upheld this interpretation of the exhaustion requirement,

prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a

heightened pleading requirement in prisoner civil rights cases.  See *Jones v. Block*, 127 S.Ct. 910,

914-915, 918-923 (2007).  A prisoner has no independent duty to plead facts plausibly suggesting

that he exhausted his available administrative remedies in order to state an actionable claim

under 42 U.S.C. § 1983.  *Block*, 127 S.Ct. at 919-21. "[T]his is not to say that failure to exhaust

---

[30]     *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[31]     7 N.Y.C.R.R. § 701.7.

23

cannot be a basis for dismissal for failure to state a claim." *Id.* at 921.  If a prisoner chooses to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id.* at 920-21.

Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed.R.Civ.P. 12(b)(6) motion to dismiss premised on failure to exhaust.  However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes.

Here, Plaintiff alleges that he filed a grievance regarding "the facts relating to [his] complaint" and "wrote the supt. of the facility" and that the final result was "nothing - always nothing."  (Dkt. No. 16 at ¶ 4.)  Defendants have not argued that Plaintiff has "pleaded himself out of court" regarding his retaliation claim, and I see nothing on the face of the second amended complaint that indicates that he has done so.  Therefore, I recommend that Defendants' motion for judgment on the pleadings be denied with respect to Plaintiff's cause of action for retaliation.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 26) be **GRANTED IN PART** and **DENIED IN PART**.  I recommend that Plaintiff's Eighth Amendment claim be dismissed and that Defendants be directed to respond to Plaintiff's due process and retaliation claims.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal**

24

holiday, in which case add a fourth calendar day).  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material that could have been, but was

not, presented to the Magistrate Judge in the first instance.[32]

BE ALSO ADVISED that the failure to file timely objections to this Report-

Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of

---

[32]      *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994)
("In objecting to a magistrate's report before the district court, a party has no right to present
further testimony when it offers no justification for not offering the testimony at the hearing
before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World
Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not
abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff
"offered no justification for not offering the testimony at the hearing before the magistrate"); 
*Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993)
(declining to consider affidavit of expert witness that was not before magistrate) [citation
omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to
raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421,
1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's
recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535
(5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and
recommendations [to raise its procedural default argument] . . . Respondent has waived
procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human
Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before
the magistrate and, if unsuccessful, to change their strategy and present a different theory to the
district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds
by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun.
Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not
entitled as of right to de novo review by the judge of an argument never seasonably raised before
the magistrate.") [citation omitted].

**judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small*

*v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).


Dated: February 5, 2009
     Syracuse, New York

                 George H. Lowe
                 United States Magistrate Judge